WILLIAM H. COLLIER, JR., CASB No. 97491
william.collier@kyl.com
ELIZABETH P. BEAZLEY, CASB No. 138198
elizabeth.beazley@kyl.com
JAMES A. MARISSEN, CASB No. 257699
james.marissen@kyl.com
MICHAEL T. WEST, CASB No. 266296
michael.west@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California  90801-1730
Telephone:    (562) 436-2000
Facsimile:    (562) 436-7416
Attorneys for Specially Appearing Defendant
CHAMPION SHIPPING AS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTOIL BUNKERING SERVICE LTD.,<br><br>                              Plaintiff,<br><br>    vs.<br><br>CHAMPION SHIPPING AS<br><br>                              Defendant.<br><br>    and<br><br>The Master of the Vessel M/T CHAMPION EXPRESS<br><br>                              Garnishee, | Case No. 2:13-cv-01291-FMO-RZ<br><br>**IN ADMIRALTY**<br><br>**RESTRICTED APPEARANCE PURSUANT TO RULE E(8)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR EXPEDITED HEARING TO RESOLVE**<br><br>**(1) DEFENDANT'S MOTION TO VACATE ATTACHMENT AND RELATED ORDERS AND**<br><br>**(2) DEFENDANT'S MOTION FOR COUNTER SECURITY**<br><br>**(DECLARATION OF ARNE VISTE FILED CONTEMPORA-NEOUSLY HEREWITH)**<br><br>Date:      March 4, 2013<br>Place:    Courtroom 22 |

KYL_LB1588408v2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................i

I. STATEMENT OF FACTS ............................................................. 3

II. LEGAL ARGUMENT.................................................................. 6

III. CONCLUSION ........................................................................ 14

KYL_LB1588408v2

# TABLE OF AUTHORITIES

Page

Aqua-Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
   460 F.3d 434 (2d Cir. 2006)...............................................................1, 10

Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad,
   591 F.3d 1208 (9th Cir. 2010) ...............................................................7

Lion v. M/V Loretta D.,
   1998 WL 307077 (D.Md. April 3, 1998)...............................................10

Marubeni Am. Corp. v. M/V Unity,
   802 F. Supp 1352 (D. Md. 1992) ......................................................1, 10

Mission Power Engineering Co. v. Continental Casualty Co.,
   883 F. Supp. 488 (C.D. 1995) ...........................................................8, 12

Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.,
   578 F. Supp. 2d 621 (S.D.N.Y. 2008) ..................................................12

Trinidad Foundry and Fabricating, Ltd. v. M/V Kas Camilla,
   776 F. Supp. 1555 (S.D. Fla. 1991) .....................................................12

Whitney-Fidalgo Seafoods, Inc. v. MISS TAMMY,
   542 F. Supp.1302 (W.D. Wash. 1982).................................................13

Williamson v. Recovery Ltd. P'ship,
   542 F.3d 43 (2d Cir. 2008)...............................................................2, 10

## FEDERAL STATUTES AND RULES

FEDERAL RULES OF CIVIL PROCEDURE, SUPP. ADM. RULE E(2)(b).............12

FEDERAL RULES OF CIVIL PROCEDURE, SUPP. ADM. RULE E(2)(b), E(7) ......1

FEDERAL RULES OF CIVIL PROCEDURE, SUPP. ADM. RULE E(4)(f)..1, 6, 8, 10

FEDERAL RULES OF CIVIL PROCEDURE, SUPP. ADM. RULE E(6) .................12

FEDERAL RULES OF CIVIL PROCEDURE, SUPP. ADM. RULE E(2)(b), LOCAL
   RULE E.9.........................................................................................13

KYL_LB1588408v2

Specially Appearing Defendant CHAMPION SHIPPING AS (hereinafter "Champion" or "Defendant") submits this Memorandum of Points and Authorities in support of its application to schedule a hearing to resolve Champion's Motion to Vacate the Attachment of M/T *CHAMPION EXPRESS*, her engines, boilers, tackle, appurtenances, furniture, gear etc. ("Vessel") for Monday March, 4.  The expedited process is required by Supplemental Admiralty Rule E(4)(f) and local admiralty rule E.10 both of which entitle the Defendant to a prompt hearing at which the Plaintiff ACTOIL BUNKERING SERVICE LTD. ("Plaintiff" or "Actoil") is obligated to show cause why the attachment should not be vacated.

In addition to moving to vacate the attachment, the Defendant will further request that the Plaintiff be obligated to provide counter security as contemplated by Supplemental Admiralty Rules E(2)(b), E(7) and local rule E.9.

Good cause exists to schedule the hearing for Monday. First, the Supplemental Admiralty Rules and the local require a prompt hearing.  The underlying basis for that requirement is founded upon principles of due process.  The Defendant was not provided notice or an opportunity to be heard before its property was seized on a pre-judgment basis. The counterbalance to the due process issues arising from that extraordinary remedy is the commensurate requirement for a prompt hearing to compel the Plaintiff to show cause why the attachment must not be vacated.  "[T]he arrest of a ship deprives its owner during the resolution of the dispute of the unfettered use of its property not to mention any revenue it may earn from leasing the vessel.  In recognition of this hardship, the party seeking to arrest a vessel must carry the burden of showing why the arrest or attachment should not be vacated."  Marubeni Am. Corp. v. M/V Unity, 802 F. Supp 1352 (D. Md. 1992); see also Aqua-Stoli Shipping Ltd., 460 F.3d at

KYL_LB1588408v2

440; ("'Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.'" <u>Williamson</u>, 542 F.3d at 51 (citing Fed. R. Civ. P., Adm. Supp. R. E(4)(f), Advisory Committee's note to 1985 Amendment).

Second, the Plaintiff is prepared to defend the attachment.  It was presumptively aware of the prompt hearing requirement before the time is sought the attachment.  This presumption is further reinforced by the fact that the Plaintiff has had ample time to consider the merits of its position.  To wit, the subject debt arose in 2009 and since the Plaintiff has unsuccessfully undertaken to establish that the Defendant is liable for this debt on other occasions, it not only is well versed in the underlying facts but also has had the opportunity to refine its argument to address any deficiencies. Moreover, and critically, the Plaintiff selected the time for its attachment and thus presumptively is ready to defend it on a prompt basis. This presumption is further underscored by the fact that the Defendant has operated in this jurisdiction for over 20 years and thus has had an asset in the jurisdiction many times since the date the debt arose.

In contrast to the lack of prejudice to the Plaintiff arising from a prompt hearing, the Defendant will suffer an erosion of its due process rights if the hearing is delayed.  It has incurred $US25,000 in commercial losses and a greater sum in attorneys' fees addressing the attachment.  It will continue to incur commercial losses and fees the longer this matter continues. For example, the additional costs of returning from Port Hueneme to the district and possible missed voyages thereafter if the Vessel is detained further.

KYL_LB1588408v2

Good Cause further exists to require the Plaintiff to post counter security in the amount of US$200,000 as a resource to the Defendant for its commercial losses, expenses, costs and fees arising from the attachment of the Vessel.  The Central District recognizes that attachments can be wrongful and awards damages in the amount of commercial losses and attorneys' fees and costs in that event.  The purpose of the counter security is to put the parties on equal footing.  If the Defendant succeeds in establishing that the attachment is wrongful, the Plaintiff resides in New Zealand (Exhibit A to the Verified Complaint).  Having chosen this jurisdiction to advance its claim, it should provide funds in this jurisdiction as security if that claim turns out to have been advanced wrongfully.

# I.

## STATEMENT OF FACTS

Champion  is the owner and operator of the M/T *CHAMPION EXPRESS*, her engines, boilers, tackle, appurtenances, furniture, gear etc. ("Vessel).  On February 21, 2013, Plaintiff ACTOIL BUNKERING SERVICE LTD. ("Plaintiff") by *ex parte* application (without notice), obtained an order from this Court attaching Champion's  property in the Central District, including the Vessel, pursuant to Rule B of the Supplemental Admiral Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

On February 21, 2013, the Plaintiff obtained an Order of Substitute of Custodian and Movement of Vessel ("Custodian Order), and an Order to U.S. Marshal re: Process ("Marshal Order").

On February 21, 2013, the Plaintiff also obtained a Notice of Attachment advising the Captain of the Vessel that the Vessel was subject to attachment. Thereafter the vessel was shifted to anchor and the

1   Custodian assumed possession of the vessel.

2          Thereafter, on February 26, 2013, Champion and Plaintiff

3   stipulated and the Court thereafter ordered that the attachment of the

4   Vessel would be suspended to permit previously scheduled Cargo

5   Operations.

6          Despite the Court's Orders for the temporary abatement of the

7   attachment to allow the M/T *CHAMPION EXPRESS* to perform cargo

8   operations, as of the date of this Application Defendant has suffered a loss

9   of approximately US$25,300 due to the loss of use of this Vessel.

10  (Declaration of Arne Viste, at ¶ 25 ("Viste Decl.").)  In addition to these

11  commercial losses already incurred, the M/T *CHAMPION EXPRESS* will

12  begin to incur losses in the amount of $19,000 pre day or approximately

13  US$792 per hour if the attachment is not vacated prior to the Vessel's

14  departure from Stockton to its next port of call.  (Viste Decl., at ¶ 26.)

15         Champion has filed, contemporaneously with the Application for

16  an expedited hearing, a Motion to Vacate Maritime Attachment and

17  Related Orders and a Request for Counter Security,  Memorandum of

18  Points and Authorities in Support thereof.  These documents set forth the

19  legal bases on which Defendant contends that Plaintiff's Verified Complaint

20  must be dismissed and Attachment vacated, specifically that, (a) Plaintiff

21  has failed to meet its burden to satisfy Rule B because there is not, and

22  never has been, any contract between Plaintiff and Champion, and (b) the

23  Plaintiff should be obligated to post counter security.

24         The conclusory allegations set forth in Plaintiff's Verified

25  Complaint combined with the abject lack of support in the documentary

26  "evidence" attached thereto compels the conclusion that there Champion

27  Shipping was <u>not a party</u> to any contract which would give rise to a valid

28  attachment of its vessel, the M/T *CHAMPION EXPRESS*.  Rather,

Champion chartered the vessel M/T *CHAMPION PACIFIC* to Pacific Inter-Link Sdn Bhd ("PIL") pursuant to an amended "Shelltime 4" charterparty (the "Charterparty"). (Viste Decl. ¶ 8; Exhibit "A" to Viste Decl.)  Pursuant to clause 8 of the Charterparty, PIL was obligated to pay hire of USD$26,500 per day for the length of time needed to complete two voyages. (Viste Decl. ¶ 9; Exhibit "A" to Viste Decl.)  Moreover, pursuant to clause 7 of the Charterparty, PIL was responsible to "provide and pay for all fuel" (being marine fuel commonly known as "bunkers") needed for the vessel M/T *CHAMPION PACIFIC* during the period she was on charter to PIL. (Viste Decl. ¶ 10; Exhibit "A" to Viste Decl.)  At no time during the period the vessel M/T *CHAMPION PACIFIC* was on charter to PIL did Champion ever received any commercial invoices or other documents whatsoever related to PIL's purchases of bunkers for the vessel M/T *CHAMPION PACIFIC*, which was customary given that clause 7 of the Charterparty specified that PIL was solely responsible to "provide and pay for all fuel" needed for the vessel throughout the charter period.  (Viste Decl. ¶ 11.)

Moreover, the Rule B attachment and Rule B relief requested is also improper because Plaintiff's Verified Complaint fails to establish that the alleged contract on which it bases its claim is maritime in nature. Rather, the contract referenced in Plaintiff's Verified Complaint reflects a commodities exchange agreement as between Plaintiff and another third party commercial commodities trader, D.C. (hereinafter "DC").  Finally, Plaintiff cannot establish its claim for breach of contract or establish the propriety of its Rule B attachment because the third party commercial commodities trader with whom it actually contracted, DC, received all remuneration owed to it by Champion Shipping's time charterer, Pacific Inter-Link SDN BHD (hereinafter "Pacific Inter-Link").  As such, Actoil is not only unable to establish privity of contract with Champion Shipping,

KYL_LB1588408v2

but it also has not, and cannot, establish that the party with whom it actually contracted was not paid.

Critically, the legal arguments contained herein, coupled with the declaration of Arne Viste make clear that Actoil is an intermediary bunker trader and that the dispute is founded on contracts between such intermediary brokers and traders. Ninth Circuit and Central District case law confirm that vessel owners, like Champion, are not obligated on bunker contracts between such intermediary Bunker brokers and traders.

To the extent a dispute exists with regard to the payment for these Bunkers, it lies between Actoil and D.C., or others, but not Champion Shipping. Thus, an expedited hearing is appropriate as there is no evidence of liability as to Champion Shipping and the absence of an underlying maritime contract between the parties makes dismissal commensurately appropriate for want of an *in personam* maritime claim permitting a Rule B attachment.

## II.
## LEGAL ARGUMENT

Rule E(4)(f) and Local Rule E.10 expressly provides the "good cause" necessary for the requested prompt hearing given the extraordinary remedy of a pre-judgment attachment afforded the Plaintiff on an *ex parte basis*. See Fed. R. Civ. P. Supp. Adm. Rule E(4)(f) and Local Admiralty Rule E.10. Central District local rule E.10 provides that "the adversary hearing following arrest or attachment under Supplemental Rule E(4)(f) shall be conducted promptly. Indeed, the requirements for a prompt hearing under Rule E(4)(f) and local rule E.10 provide the Defendant with its only due process protection; it was not provided notice or an opportunity to be heard at the pre-attachment hearing and thus is entitled to be heard post

KYL_LB1588408v2

1   attachment on a prompt basis.

2   Any delay in the hearing will prejudice Champion both because
3   the distance between the attachment and the hearing further interferes
4   with the due process protections and also because the Defendant has a high
5   likelihood of succeeding on the underlying motion.  In these circumstances,
6   Champion requests that it be provided a hearing, Monday, March 4, 2013 at
7   10:00 a.m. or as soon thereafter as the matter can be heard.

8   As it applies to the merits, it appears that the Plaintiff had not
9   apprised itself of the recent Ninth Circuit opinion on facts almost identical
10  to those presented here, wherein Judge Kozinski resolved the case squarely
11  against the Plaintiff affirming the vacatur and where the District Court
12  subsequently entered an order for wrongful attachment awarding
13  commercial losses and attorneys' fees to the defendant.  Equatorial Marine
14  Fuel Mgmt. Servs. PTE v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir.
15  2010).  The Plaintiff offers no excuse for proceeding in the fact of binding
16  precedent and indeed improperly attempted to amend the complaint once it
17  was apprised of the relevant case law.  The amendment, however, is of no
18  legal moment as the attachment must be valid at the time of the
19  attachment and the case cannot be improved with amended complaints.  Id.
20  In Equatorial, the Plaintiff attempted to amend to add an agency theory
21  and that undertaking was rejected by the Ninth Circuit.  To hold otherwise
22  would be to permit pre-judgment seizures on verified facts subject to
23  correction, a situation which would encourage improper attachments for
24  purposes of securing leverage in commercial disputes.  Attachments must
25  be based on the facts and validated or invalidated on the facts that were
26  contained in the complaint upon which the attachment was based.  The
27  Court cannot invite seizures based on facts loosely cobbled together subject
28  to modification at a later date.  Such a procedure does not exist and

KYL_LB1588408v2

certainly cannot be contemplated on the ex parte basis that is fundamental to the attachment process.

Good cause for an expedited hearing also exists under <u>Mission Power Engineering Co. v. Continental Casualty Co.</u>, 883 F. Supp. 488 (C.D. 1995).  To be granted, an applicant must establish (1) that the moving party will be prejudiced if the underlying motion is not heard according to regular noticed motion procedures; and, (2) the moving party is without fault in creating the crises that requires ex parte relief.  <u>Id</u>. at 492.  Prejudice is determined on a sliding scale—"[i]f the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success on the merits," however, "[i]f drastic harm is threatened, then it is sufficient to show that there are close issue that justify the court's review before the party suffers the harm."  <u>Id</u>.

*Grounds*:  Champion seeks an issuance of an order or orders which Vacates the Maritime Attachment Order and Related Orders issued in this matter.  Good Cause to grant *ex parte* relief exists under Rule E(4)(f), which provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  FED. R. CIV. P. SUPP. ADM. Rule E(4)(f).  This Court's Attachment Order recited this requirement in its Order issued on February 21, 2013.

Here, because the underlying Motion to Vacate the attachment has a high likelihood of success on the merits, Champion would be irreparably prejudiced if the Court were to deny the *ex parte* application.  <u>See</u>, <u>Mission Power Engineering Co.</u>, 883 F. Supp. at 492 (prejudice is evidenced where there is a high likelihood of success on the merits of the underlying motion).  The Attachment and Related Orders should be vacated

because the Plaintiff has failed to state a claim and/or meet its burden to satisfy Rule B; specifically, Plaintiff's claims rest upon a misguided theory that Plaintiff had a contract to supply marine fuel (hereinafter "Bunkers") to Champion, that Champion accepted the Bunkers but thereafter refused to make payment and thusly breached a contract with Plaintiff and as a result was unjustly enriched. Yet the documents confirm the opposite.

As demonstrated in the attached Memorandum of Points and Authorities in Support of this *ex parte* Motion to Vacate, the Viste Decl. dated February 28, 2013, and the complete files and records in this action, it is clear that the allegations in the Verified Complaint are untrue.

There was never any contract between Plaintiff and Champion. Indeed, on 15th December 2008, Champion entered into a charterparty with Pacific Inter-Link BHD (PIL) (the "Charterparty"). PIL were the charterers under the Charterparty. The Charterparty provided that PIL is responsible for purchase of any and all bunkers. Champion never received any of the commercial invoices or other related documents related to PIL's bunker purchases until July 2010, being more than a year after the Bunkers purchased by PIL.

Moreover, PIL contracted with a third party, D.C. Maritime & Shipmanagement-Logistic Ltd. ("DC") and PIL paid DC all amounts owing for the delivery of Bunkers. It is simply impossible that Champion, who was not a party to any portion of the bunker contracts, could have been unjustly enriched.

Moreover, the underlying contract is not sufficiently salty to constitute a maritime contract. As noted above, Champion is not a party to the "contract" attached to the Verified Complaint; indeed, it would appear that the "contract" attached to the Verified Complaint relates to transactions between intermediary Bunker brokers. Intermediary Bunker

KYL_LB1588408v2

contracts are nothing more than commodities trading and do not contemplate the delivery of Bunkers to a vessel.  Accordingly, the Verified Complaint fails to state an underlying basis worthy of Admiralty jurisdiction.

     *Extraordinary Relief Warranted*.  Under Rule E(4)(f) and the case law, expedited hearings are warranted where a vessel has been arrested.  "[T]he arrest of a ship deprives its owner during the resolution of the dispute of the unfettered use of its property not to mention any revenue it may earn from leasing the vessel.  In recognition of this hardship, the party seeking to arrest a vessel must carry the burden of showing why the arrest or attachment should not be vacated."  <u>Marubeni Am. Corp. v. M/V Unity</u>, 802 F. Supp 1352 (D. Md. 1992); <u>see also</u> <u>Aqua-Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 440 (2d Cir. 2006) (due process concerns arise where the defendant (to a Rule B attachment) is deprived of a prompt post-seizure opportunity to contest the validity of the seizure); <u>Williamson v. Recovery Ltd. P'ship</u>, 542 F.3d 43, 51 (2d Cir. 2008) ("'Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.'" (citing Fed. R. Civ. P., Adm. Supp. R. E(4)(f), Advisory Committee's note to 1985 Amendment)); <u>Lion v. M/V Loretta D.</u>, 1998 WL 307077 (D.Md. April 3, 1998) ("The function of the expedited postarrest hearing is to afford due process to the shipowner whose vessel has been arrested without prearrest hearing." (internal citations omitted)).  Thus, pursuant to Rule E(4)(f) and relevant case law, the ex parte application must be granted and the underlying motion heard on an expedited basis because the subject of the motion is to vacate a maritime attachment.

Here, Champion will suffer irreparable hardship if the case is not dismissed and the attachment vacated.  The vessel has already sustained commercial losses of approximately US$25,300.  (Viste Decl. at ¶ 25) exclusive of fees and costs. If the attachment is not lifted the vessel will remain off hire and will lose US$19,000 per day.  (Viste Decl. at ¶ 25.) Champion is rapidly losing the good will with its customers and the attachment has placed it in an extremely difficult position.  (See Viste Decl. at ¶ 27.)  It urges the Court to vacate the attachment.  (Viste Decl. at ¶ 28.)

Furthermore, as the above referenced facts demonstrate, undue hardship will certainly result to Champion if the Court fails to consider the instant motion on an expedited basis.  While Plaintiff has incurred very little monetary risk in pursing the instant action, Champion has and will continue to incur <u>substantial</u> losses as this matter lags on.  These losses are particularly troubling given that Champion is an innocent third party to a dispute as between Plaintiff and DC.   Given the nature of this dispute and the commercial realities involved, the lodged Motion to Vacate the Attachment is of pressing urgency and must be considered in an expedited manner, or risk irreparable prejudice to Champion.

Finally, equity suggests that the Defendant is due expedited relief as the Court has granted Plaintiff its relief on an *ex parte* basis. On February 21, 2013, Plaintiff filed an *Ex Parte* Application seeking a Maritime Attachment pursuant to Rule B.  In response to Plaintiff's *ex parte* application, this Court issued a maritime attachment over the M/T *CHAMPION EXPRESS* on February 21, 2013, and a Notice of Attachment advising the Captain of the Vessel that the Vessel was subject to attachment on February 21, 2013.  Reciprocity and fairness necessitates that the Court grant Champion the same courtesy.  Plaintiff had the opportunity to set forth the grounds and evidence for the instant

attachment in its Verified Complaint.  It was Plaintiff's burden to demonstrate that a Rule B attachment was appropriate.  However, as the attached Memorandum of Points and Authorities demonstrates, Plaintiff's e*x parte* application was without merit, and accordingly, justice requires that the instant motion be heard on an expedited basis to dispel with the meritless claim.  See Mission Power Engineering Co., 883 F. Supp. at 492.

Finally, Champion is without fault in creating the crisis that requires that the Court hear the underlying motion on an expedited basis. Champion is an innocent party to a dispute between DC and Plaintiff.  It is Plaintiff who attested to the existence of a contract as between Plaintiff and Champion (which does not exist because Champion at no time contracted with Plaintiff for the provision of fuel) and to Champion's unjust enrich-ment (which did not occur as Champion paid for all fuel used on its vessels). Based upon its verified assertions, this Court attached the M/T *CHAMPION EXPRESS*, Champion's vessel, and as a result, Champion has suffered great losses that will continue without speedy action taken by this Court.

As it applies to Defendant's request for countersecurity, good cause exists to set an expedited hearing to set an amount for counter security. The District Court "has 'broad discretion' to order a party to post security for costs and expenses" pursuant to Supplemental Rule E(2)(b). Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp., 578 F. Supp. 2d 621, 628 (S.D.N.Y. 2008), quoting Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399 (2d Cir. 1995); accord, Trinidad Foundry and Fabricating, Ltd. v. M/V Kas Camilla, 776 F. Supp. 1555, 1557 (S.D. Fla. 1991) (in effectuating the purposes of Supplemental Rule E, "district courts are afforded broad discretion to determine whether, and in what amount, countersecurity shall be posted"); accord, FED. R. CIV. P. SUPP. ADM. RULE E(6) ("Whenever security is taken the court may, on

motion and hearing, for good cause shown . . . [require] new or additional sureties.").  Good cause can be established pursuant to Supplemental Rule E(2)(b) where the moving party justifiably suffers from insecurity in respect to satisfying a potential judgment.  Whitney-Fidalgo Seafoods, Inc. v. MISS TAMMY, 542 F. Supp.1302, 1305, 1306 (W.D. Wash. 1982). In addition to Rule E(2)(b), Local Rule E.9 specifically contemplates and authorizes the posting of security for costs and expenses recovered under Rule E(2)(b).

> In an action under the Supplemental Rules, a party may move upon notice to all parties for an order to compel an adverse party to post security for costs and damages incurred if the attachment or arrest is found to have been wrongful with the Clerk pursuant to Supplemental Rule E(2)(b). . . .

CENTRAL DISTRICT LOCAL RULES FOR ADMIRALTY AND MARITIME CLAIMS, RULE E.9[1] (emphasis added).  In light of the great weight of authority supporting the posting of additional security and the compelling facts of this case, this Court should exercise its discretion and order Plaintiff to post US$200,000 by depositing that amount with the Court.

///

---

[1] "The party so ordered shall post the security within five (5) days after the order is entered."  Id.

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant requests a hearing on Monday, March 4, 2013 to resolve these issues.

DATED:  March 1, 2013



WILLIAM H. COLLIER, JR.
ELIZABETH P. BEAZLEY
JAMES A. MARISSEN
MICHAEL T. WEST
KEESAL, YOUNG & LOGAN
Attorneys for Specially Appearing
Defendant
CHAMPION SHIPPING AS

- 14 -

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGLES

I am employed in the County of, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, P.O. Box 1730, Long Beach, California  90801-1730.

On March 1, 2013, I served the foregoing documents described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR EXPEDITED HEARING TO RESOLVE (1) DEFENDANT'S MOTION TO VACATE ATTACHMENT AND RELATED ORDERS AND (2) DEFENDANT'S MOTION FOR COUNTER SECURITY (DECLARATION OF ARNE VISTE FILED CONTEMPORA-NEOUSLY HEREWITH)** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

GARY R. CLOUSE (Bar No. 111055)          Attorneys for Plaintiff
gclouse@icclawfirm.com                         ACTOIL BUNKERING SERVICE LTD.
ISAACS, CLOUSE, CROSE & OXFORD, LLP
3110 Main Street, Suite 210
Santa Monica, California 90405
Telephone: 310-458-3860
Fax: 310-395-9880

J. Stephen Simms                               Attorneys for Plaintiff
jssimms@simmsshowers.com                  ACTOIL BUNKERING SERVICE LTD.
W. Charles Bailey, Jr.
wcbailey@simmsshowers.com
Marios J. Monopolis
mjmonopolis@simmsshowers.com
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone: 410-783-5795
Fax: 410-510-1789

☒      BY CM/ECF:  The document was electronically served on the parties to this action via the mandatory United States District Court of California CM/ECF system upon electronic filing of above-described document.

Executed on March 1, 2013 at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
ANA S. NUNEZ