O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ACTOIL BUNKERING SERVICE LTD., | ) | CASE NO. CV 13-01291 FMO (RZx) |
| Plaintiff, | ) | IN ADMIRALTY |
| vs. | ) ) | ORDER AFTER HEARING PURSUANT |
| CHAMPION SHIPPING AS, | ) ) | TO FED. R. CIV. P., SUPP. R. E(4)(f); ORDER ON DEFENDANT'S MOTION |
| Defendant. | ) | TO VACATE ATTACHMENT AND POST COUNTER-SECURITY |
| and | ) | |
| The Master of the Vessel M/T CHAMPION EXPRESS, | ) ) ) | |
| Garnishee. | ) ) | |

This matter came before the Court on March 6, 2013 on the following matters: (1) Defendant Champion Shipping AS's motion to vacate the attachment previously ordered by the Court; (2) Defendant Champion Shipping AS's motion for an order that Plaintiff Actoil Bunkering Service Ltd. post counter-security; and (3) the hearing requested by Defendant pursuant to Rule E(4)(f) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Plaintiff appeared through its counsel J. Stephen Simms and Gary R. Clouse. Defendant appeared through its counsel William H. Collier, Jr. and Michael T. West. The Court heard

argument of counsel and took the matter under submission.  The Court has reviewed all the materials submitted by the parties, and is fully advised.

On February 21, 2013, Plaintiff Actoil Bunkering Services Ltd. filed its Complaint and requested ex parte an order authorizing marine attachment of Defendant's vessel, the M/T CHAMPION EXPRESS, once the vessel entered the waters of the Central District of California.  The Court granted the order and, although modified, the order remains in effect.  Plaintiff since has filed an amended complaint.  There is some dispute between the parties as to whether the Court should consider the original complaint or the amended one when deciding this motion, but the dispute is academic because the result would be the same.

Under Supplemental Rule B, a plaintiff may attach a defendant's property if four conditions are met:  (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment.  *Equatorial Marine Fuel Management Services PTE Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010), citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).  There is no dispute that the defendant cannot be found within this district, as that phrase is used within the rules, nor that property of Defendant can be found within the district; nor has Defendant raised a statutory or maritime law bar to the attachment.

The other requirement of Rule B is contested, however.  Defendant makes two principal arguments.  The first is that the dispute is not a maritime dispute.  Insofar as this is a question of contract, the Court disagrees.  The dispute centers around bunker fuel that was delivered to another of Defendant's ships, the M/T CHAMPION PACIFIC, while that ship was in Turkey in 2009.  This argument is laid to rest by *Equatorial, supra*: "Equatorial's claim is that it supplied bunkers to MISC's ships, and regardless of whether this fuel was delivered by a third party, the alleged dealings are clearly maritime in nature."

1    *Equatorial, supra*, 591 F.3d at 1210, citing *Exxon Corp.v. Cent. Gulf Lines, Inc.*, 500 U.S.

2    603, 612-13, 111 S. Ct. 2071, 114 L.Ed.2d 649 (1991).

3            The other argument is the principal argument.  Defendant asserts that there is

4    not a "valid prima facie admiralty claim," *Equatorial*, 591 F.3d at 1210, because there was

5    no contract between Plaintiff and Defendant.   The Court agrees with the gist of this

6    argument.

7            This is, of course, a preliminary proceeding, not a trial on the merits, and the

8    Court does not make findings of fact that bind the ultimate decision.  Rather, the Court

9    determines that there is not a reasonable probability that Plaintiff will prevail on its claim.

10   *See KTB Oil Corp. v. M/V Cielo Di Tokyo*, 2013 WL 708536 (E.D. Cal. February 26, 2013)

11   (vacating arrest of vessel).  The original complaint is very cursory as to the existence of an

12   alleged contract between Plaintiff and Defendant.   It identifies the contract simply by

13   saying "Pursuant to maritime contracts between Actoil and Champion, as confirmed by

14   Actoil's sales terms and conditions, Exhibit A hereto . . . ."  Complaint, ¶ 6.  The Exhibit

15   A referred to does not mention Defendant by name.  Rather, that exhibit is an invoice to

16   the ship M/V CHAMPION PACIFIC, and then lists a number of other parties in an

17   "and/or" fashion.  Included within that list is "and/or owners," but the owners are never

18   identified.  Champion AS is never stated by name to be a party to a contract, pursuant to

19   which the invoice is being tendered.  No communication from Champion AS to Plaintiff

20   Actoil, from which a contract between those two parties might be inferred, is attached to

21   the Complaint.  No signature of a Champion official is attached to any contract.  Plaintiff

22   does attach an additional exhibit, Exhibit B, which are terms and conditions that *Plaintiff*

23   appears to have added to its agreement to supply fuel, but those additional conditions are

24   not illuminating in terms of showing that the contract for the supply of fuel is between

25   Plaintiff and Defendant; there is no indication that *Defendant* ever agreed to those

26   conditions, and the term "buyer" is defined, in a circular and unhelpful fashion, as "a party

27   obligated to buy Marine Fuel under this Agreement."

28

In the First Amended Complaint, Plaintiff makes additional allegations. It states that the fuel was ordered by D.C. Denizcilik Gemi Isletmeciligi-Lojistik Hismetleri Ltd. Sti. ("DGI-LH"). DGI-LH was said to be acting as an agent, and again there is a list of "and/or" entities, one of which is "Owners." First Am. Complt. ¶ 3. The amended complaint then refers to a Declaration from DGI-LH, which it attaches and incorporates. This declaration too uses the list of "and/or." It does not state, in simple and direct terms, that Defendant entered a contract with Plaintiff (either by itself or by its agent), on or about a date certain, for a specific purpose.

Just based on the pleadings, therefore, there is very limited support for the notion that Plaintiff had a contract with Defendant, and the Court therefore cannot say that there is a reasonable probability that Plaintiff will prevail on its claim against Defendant. Supplemental Rule E(4)(f) places the burden of sustaining the elements of entitlement to an attachment on Plaintiff, not Defendant: "the plaintiff shall be required to show why the arrest or attachment should not be vacated." Plaintiff has not carried this burden as to its pleadings.

In *Equatorial*, the Court did not rely just on the pleadings, however, but also referred to materials submitted in response to the defendant's motion to vacate. *Equatorial*, 591 F.3d at 1210-11. At oral argument here, the Court asked counsel for both parties if everything submitted on the motion could be considered, and both counsel responded that yes, everything that had been submitted could be considered. *See also Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 52-53 (2d Cir. 2008).

The submissions in connection with the motion to vacate make even clearer that Plaintiff has failed to carry its burden of showing a reasonable probability that it will prevail on its claim against Defendant. Plaintiff asserts that declarations from one of DGI-LH's officials shows that DGI-LH was Defendant's agent, and therefore that the contract that DGI-LH entered into with Plaintiff was in fact a contract entered into on behalf of Defendant. At oral argument, counsel for Plaintiff called DGI-LH Defendant's "general agent," but in response to the Court's question could point to no place in the declaration

where DGI-LH stated that Defendant had appointed DGI-LH as its general agent. Although there is no reference to a "general agent," the declaration does say that Defendant asked DGI-LH to be its agent and confirmed that agency by a document which is attached. The attached document, however, says something different in explaining the nature of the agency.  The "activity" covered by the document is "canal transit," to facilitate transit of the vessel in and out of port.  (This agency agreement is dated a day *after* the fuel already had been supplied, and the document was not final; it was stated to be contingent upon DGI-LH's providing certain documents in return.)

Declarations submitted by Defendant make even clearer that the Defendant/DGI-LH agency contract was not an authorization for DGI-LH to act as Defendant's general agent or as an agent for the procuring of fuel, but rather as Defendant's agent to guide the vessel through the Turkish strait (Bosphorus) (in the words of the agreement, "canal transit") which the Court understands to be the strait linking the Marmara Sea and the Black Sea.  Defendant's submissions also show that Defendant chartered the vessel M/T CHAMPION PACIFIC to Pacific Interlink SDN BHD (PIL), and that under *that* contract the Charterer PIL, not Defendant (the vessel owner), was solely responsible for obtaining and paying for fuel for the vessel.

It is a cardinal rule of agency law that it is the principal who must manifest an intention to appoint an agent, and that the scope of the agent's authority is determined by the contract between the principal and the agent. RESTATEMENT OF AGENCY §§ 1.01, 2.02. Plaintiff can point to nothing whereby Defendant manifested an intention to appoint DGI-LH as a general agent or as an agent for obtaining fuel for its vessel which was under charter to a third party.

At oral argument, counsel for Plaintiff protested that, at this early stage of the litigation, the most Plaintiff could rely on was the statement of the supposed agent itself, not the principal, and likened the situation to a consumer's buying an insurance policy from a State Farm agent.  Plaintiff says that the consumer would assume, reasonably, that the company had authorized the agent to bind the company.  There are, no doubt, many ways

in which the situations are dissimilar, not the least of which is that one can reasonably assume that the State Farm agent represents the State Farm insurance company because the company has allowed it to use its trade name and trademark. As indicated earlier, however, even DGI-LH's statements to this Court are nowhere near as definitive, and the agency appointment on its face, and certainly as further amplified by Defendant's proof, had a purpose entirely different from the obtaining and supplying of fuel. Moreover, Plaintiff is not just now learning of this issue. The fueling occurred in June 2009, and Plaintiff has been in contact with Defendant about the matter since 2010. Plaintiff even engaged in litigation about the matter in Turkey. The argument that Plaintiff's reliance on the vague statements of the supposed agent should be looked on leniently because of the early stage of this litigation is not credible in the face of the history of the dispute.

Based on the record before the Court, therefore, the contract claim cannot serve as a basis for the attachment of the vessel. In addition to its contract claim, Plaintiff included in its amended complaint a claim for unjust enrichment. The Court has some reservations as to whether a claim for unjust enrichment in fact is a maritime claim. A party who is unjustly enriched has an implied obligation to repay the amount by which it has been unjustly enriched, but at that point, in legal theory at least, the issue is a debt, regardless of the source of the debt. But even on the assumption that the unjust enrichment claim can be considered a maritime claim, *see Equatorial*, 591 F.3d at 1210, Defendant's submissions show that PIL, the party who chartered the vessel from Defendant and ordered the fuel, in fact paid DGI-LH for the fuel. DGI-LH, which apparently obtained the fuel from Plaintiff, did not forward the payment on to Plaintiff, but applied it to its own account (and that apparently is the source of some of Plaintiff's underlying dispute.) So the fuel itself *was* paid for; the vessel did not get a free ride. In these circumstances, the Court cannot conclude that Plaintiff has carried its burden of showing a reasonable likelihood of success on its claim. *Equatorial*, 591 F.3d at 1211.

The Supplemental Rules contemplate an early submission of proof, not for the purpose of determining the outcome of the underlying claims, but for the purpose of

determining the right to attach the vessel when it comes into the waters of the jurisdiction. As the Ninth Circuit ruled in *Equatorial*, the plaintiff had the burden of showing that it had a *valid* prima facie contract or unjust enrichment claim.  The Court went on to explain that, whereas the plaintiff could obtain an attachment *ex parte*, it comports with due process to put the creditor to an early showing of his proof.  On the basis of the record before the Court, Plaintiff has failed to carry its burden.

The motion to vacate the attachment is granted.  The Court will issue a separate order releasing the vessel.

Defendant's motion for counter-security is denied.  No security has been posted by Defendant, and therefore there is no counter-security to be posted.  See Supplemental Rule E(7).  Nor is counter-security authorized by Rule E(2), which refers to security for costs, not for an anticipated counterclaim for wrongful attachment.

IT IS SO ORDERED.


DATED:  March 6, 2013


_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE